IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| BRANDIE JONES, | |
| Plaintiff, | |
| v. | 2:24-CV-144-Z |
| BAPTIST COMMUNITY SERVICES, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss for Failure to State a Claim ("Motion") (ECF No. 8), filed July 17, 2024, Plaintiff's Motion to Transfer (ECF No. 10), filed July 23, 2024, and Plaintiff's second Motion to Transfer (ECF No. 11), filed August 2, 2024. Plaintiff responded to Defendant's Motion to Dismiss on August 2, 2024, in her second Motion to Transfer. ECF No. 11. Having reviewed the complaint, briefing, and the relevant law, the Court **GRANTS** the Motion to Dismiss for Failure to State a Claim and **DENIES AS MOOT** both of Plaintiff's Motions to Transfer.

### BACKGROUND

Plaintiff filed her pro se complaint against Defendant and other individuals on June 24, 2024, in the Southern District of Texas. ECF No. 1. Plaintiff began by filing a Charge of Discrimination with the Equal Employment Opportunity Commission on March 7, 2024. ECF No. 1 at 5. In her Charge, Plaintiff outlined she began working for Defendant around August 2023. ECF No. 1 at 5. During her time working for Defendant, Plaintiff believed she "was discriminated against because of [her] race, sex, and religion" and that she was "subjected to disparaging and harassing treatment by [her] coworkers and supervisor" along with a "hostile work environment that included sexual harassment." *Id.* The EEOC issued a Determination and Notice of Rights letter on March 25, 2024, announcing that the EEOC would

not pursue Plaintiff's Charge of Discrimination. ECF No. 1 at 4. In that letter, the EEOC notified Plaintiff of her right to sue within 90 days of receipt of the Determination and Notice of Rights. *Id.*

The Southern District of Texas partially dismissed Plaintiff's complaint against the individual defendants. ECF No. 4. But the Southern District of Texas did not analyze the claims against the Defendant. *Id.* Despite proper venue in the Southern District of Texas, the court *sua sponte* transferred the case to the Northern District of Texas, Amarillo Division, under 28 U.S.C. Section 1404(a) on July 2, 2024. *Id.* at 5, 10. Defendant filed its Motion to Dismiss on July 17, 2024, and Plaintiff responded on August 2, 2024. ECF Nos. 8, 11.

LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits courts to dismiss suits if the plaintiff fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference" that the defendant is liable. *Iqbal*, 556 U.S. at 678. While a complaint "does not need detailed factual allegations," the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The suit need not probably succeed, but it must have "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The Court uses its "judicial experience and common sense" to evaluate whether a complaint holds a plausible claim to relief. *Id.* at 679. At this stage, the Court construes well-pled facts in the complaint "as true and 'view[s] them in the light most favorable to the plaintiff.'" *Vardeman v. City of Houston*, 55 F.4th 1045, 1050 (5th Cir. 2022) (quoting *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th

Cir. 2019) (alteration in original)). But the Court need not accept plaintiff's conclusory allegations and legal conclusions as true. *Iqbal*, 556 U.S. at 679.

Courts grant pro se pleadings a "liberal construction." *Brown v. Tarrant Cnty.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But even so, a "liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-CV-2465, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). Pro se plaintiffs, just like everyone else, "must allege facts, not legal conclusions." *Hanson v. Town of Flower Mound*, 679 F.2d 497, 504 (5th Cir. 1992). If it were otherwise, courts would be required "to explore exhaustively all potential claims of a *pro se* plaintiff" which would "transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). This courts will not do.

ANALYSIS

Plaintiff has levied allegations of racial, sexual, and religious discrimination against Defendant under Title VII of the Civil Rights Act of 1964. ECF No. 1 at 2; 42 U.S.C. § 2000e-2(a)(1). For the reasons described below, Plaintiff fails to allege facts sufficient to sustain her claims.

**I. Religious Discrimination**

To allege a prima facie case of religious discrimination, a plaintiff must present evidence that "(1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action for

3

failing to comply with the conflicting employment requirement." *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014) (quoting *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013)).

Plaintiff's dispute centers around Defendant requiring her to test for the coronavirus in violation of her religious beliefs. ECF No. 1 at 10. She alleges that "defendants' Covid testing protocols were a discrimination against my religion that proved to harm me causing covid sickness and medical medical [sic] cost of $1,360 that had never existed before being subjected to Baptist Community Services covid testing protocols." *Id.* After an employee acquired the coronavirus, Defendant wanted all employees tested. *Id.* at 11. But Plaintiff refused "based on religious belief and health concerns." *Id.* She alleges she had several calls with "HR Toby"[1] about accommodating her religious objection. *Id.* HR Toby promised the test would be conducted with a sterile swab which apparently reassured Plaintiff that she could test without violating her "belief with Covid" which "was a strongly held belief that had proven to successfully protect [her] health from Covid." *Id.* But the second or third test swab was not sterile. *Id.* Plaintiff concludes "[i]t was unethical and a discrimination against my religion to not provide me with a sterile swab like we had agreed." *Id.*

Defendant simply notes that nowhere does Plaintiff allege a "bona fide religious belief" and thus fails to meet the first element. ECF No. 9 at 2. Plaintiff sufficiently alleges the second element because she claims the coronavirus testing requirement conflicted with her religious belief. And she sufficiently alleges the third element because she informed HR Toby of her objections.

But Defendant is correct that nowhere does Plaintiff even begin to explain her bona fide religious belief. All she alleges is that she had a religious belief but does not clarify what that religious belief was or why it prevented her from testing for the coronavirus. And Plaintiff likely does not sufficiently allege the fourth element, either. She claims that she contracted the coronavirus from the

---

[1] The Court is unsure whether the HR representative's name was Toby or whether Plaintiff's reference is designed to evoke the HR representative's name in the television series, *The Office*.

testing procedure but does not allege that she suffered an adverse employment decision due to her religious belief. In fact, Plaintiff satisfied Defendant's employment requirement by taking the coronavirus test. She does not allege that Defendant took any action against her at all for her yet-unknown religious beliefs related to the coronavirus testing requirement. For these reasons, Plaintiff failed to allege facts that would constitute a prima facie case of religious discrimination under Title VII.

### II. Racial Discrimination

To allege a prima facie case of racial discrimination, a plaintiff must present evidence that she

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Ernst v. Methodist Hospital System*, 1 F.4th 333, 339 (5th Cir. 2021) (quoting *Stroy v. Gibson ex rel. Dep't of Veteran Affs.*, 896 F.3d 693, 698 (5th Cir. 2018)). An adverse employment action is any that affects the "terms, conditions, or privileges of employment." *Young v. City of Houston*, 906 F.2d 177, 182 (5th Cir. 1990). The Fifth Circuit requires showing "that the employer made an ultimate employment decision to establish that the plaintiff has suffered an adverse employment action." *Williams v. U.S. Dep't of Navy*, 149 F. App'x 264, 269 (5th Cir. 2005). Such ultimate employment decisions can include hiring, firing, promoting, compensating, or granting leave. *Id.* If a plaintiff makes a prima facie case, the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000).

Plaintiff fails to allege evidence that could be construed as supporting several of the required elements. The Court cannot discern *how* Plaintiff was racially discriminated against. Much of her complaint focuses on repetitive and confused allegations of being "sex trafficked . . . because of [Defendant's] homosexual jealousies and my religious beliefs." ECF No. 1 at 8. But none allege

Defendant discriminated against her because of her *race*. Construing her pleadings liberally, she does allege she is a member of a protected group. *Id.* ("I was sex trafficked and assaulted because I was a white heterosexual woman that believed in god [sic] and did not do occult things."); *Id.* at 12 (same). At the least, she claims she is "white." But on the remaining elements, she does not explain what her position was at Baptist Community Services nor that she was qualified for it. She does not allege any adverse employment action, either. The complaint leaves it entirely unanswered whether she even still works at Baptist Community Services or not. And finally, Plaintiff does not allege facts that would show she was replaced by a nonwhite employee in her position nor that she was treated less favorably than other nonwhite employees. Thus, Plaintiff does not allege facts that would set out a plausible case of racial discrimination under Title VII.

### III. Sexual Harassment

The heart of Plaintiff's complaint focuses on her allegations of being sexually trafficked. Many of the facts alleged in Plaintiff's complaint warrant dismissal and no assumption of truth because they are "clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (quoting *Nietzke v. Williams*, 490 U.S. 319, 327 (1989)). Clearly baseless facts include those that are "fanciful," "fantastic," and "delusional." *Neitzke*, 490 U.S. at 325, 328. Thus, the Court need not assume such facts true when they "rise to the level of the irrational or the wholly incredible." *Denton*, 504 U.S. at 33. A court must be sure to not dismiss such facts just because it finds them "unlikely," however. *Id.* District courts are "all too familiar" with such frivolous facts. *Neitzke*, 490 U.S. at 328.

Plaintiff's complaint is replete with such facts. She appears to allege some sort of mind control related to occult sex trafficking practices claiming she's "working and thinking about work, then a dumbness occurs and then there is a cult terrorization to stop working on what I'm working on . . . and instead to work on something that is not priority." ECF No. 1 at 9. She alleges that two of her coworkers

6

were assaulting her with a "physical/sexual assault and cult assault" that results in "a physical assault of my vagina or anus usually more than one, physical jerks of my body then a dumbness" which "forces the hearing of occult/cult things." *Id.* The mind-control-like allegations continue and include claims she was assaulted and then "hearing a chanting of something over and over until [she's] walking to a restaurant where [a coworker] is sitting at a window seat. It was not the restaurant where [she] wanted to eat." *Id.* at 10. The fanciful allegations include requesting restraining orders against a litany of people including "the persons who were or were acting as Kamala Harris . . . and Katanji Jackson Brown [sic] at Six Flags in the 80's." *Id.* at 24–25. She also has information about others' "involvement with Jon Bonet Ramsey [sic]" and how they "provided information such as [to] tell the cops to search" her body for "waterhose parts." *Id.* at 26. The Court does not credit such factual allegations without zero evidence to demonstrate their veracity.

Defendant notes that Plaintiff does seem to recount a particular workplace incident in her complaint. ECF No. 9 at 3. The incident seems rooted in a conflict with another coworker who was "doing some sort of prison gang violence" by "standing very close" and "positioning herself behind my butt." *Id.* at 17–18. The specific claim of sexual harassment is rooted in when her coworker called her "boo." *Id.* at 18. Plaintiff interprets that comment to mean that her coworker wanted her to be "her prison lesbian." *Id.* Plaintiff reported this incident to her supervisor and threatened to quit in that conversation but does not appear to have quit. *Id.* at 18–19. She later reported the incident in an email to the human resources department at Baptist Community Services. *Id.* at 17. The email recounts the incident before devolving into more quite fanciful allegations. *See id.* at 19.

Construing Plaintiff's pleadings liberally, she fails to allege a case for sexual harassment. To successfully allege a sex discrimination claim based on a hostile work environment, a plaintiff must show that:

7

> (1) she is a member of a protected class; (2) she suffered unwelcomed harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment "affected a term, condition, or privilege of employment"; and (5) "the employer knew or should have known" about the harassment and "failed to take prompt remedial action."

*West v. City of Houston*, 960 F.3d 736, 741 (5th Cir. 2020) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). To rise to the level of affecting a term, condition, or privilege of employment, the harassment "must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008) (quoting *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 163 (5th Cir. 2007)) (alteration in original). It cannot be one-off or occasional comments but must instead be objectively and subjectively hostile or abusive. Courts examine considerations including "(1) 'the frequency of the discriminatory conduct;' (2) 'its severity'; (3) 'whether it is physically threatening or humiliating, or a mere offensive utterance'; and (4) 'whether it unreasonably interferes with an employee's work performance.'" *West*, 960 F.3d at 742 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Plaintiff fails on several elements. She sufficiently alleges she is a member of a protected class. ECF No. 1 at 8. And interpreting her pleadings quite liberally she sufficiently alleges unwelcome harassment through her coworker being quite close to her and calling her "boo." But she fails to allege that her alleged harassment was based on her membership in a protected class. And she certainly fails the fourth element. The interaction described with her coworker did not affect a term, condition, or privilege of employment. To constitute a hostile work environment, the harassment must "be sufficiently severe or pervasive." *Aryain*, 534 F.3d at 479. But Plaintiff only plausibly alleges one interaction at her workplace that could be interpreted as harassment. And even that incident seems not severe but a "mere offensive utterance." *West*, 960 F.3d at 742 (quoting *Harris*, 510 U.S. at 23).

Employees routinely have conflict with each other in the workplace. But without that conflict rising to pervasive harassment that interferes with work performance, the alleged harassment does not affect a term, condition, or privilege of employment. Finally, on the fifth element, Plaintiff also fails. She provides evidence that she let her employer know about the incident. But she fails to demonstrate that her employer did not take remedial action. She says nothing about her employer's reaction to her complaint regarding the incident. For these reasons, Plaintiff does not sufficiently allege a sexual harassment claim under Title VII.

CONCLUSION

Accordingly, Defendant's Motion is **GRANTED**. Plaintiff's Motions to Transfer are **DENIED AS MOOT**. The case is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED**.

November 4, 2024

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE